## Autry v. Autry.

(Decided February 24, 1931.)

E. S. HOWARD for appellant.

HEAVRIN & MARTIN for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Veachel Autry sued his wife, Zella Autry, for divorce on the ground that she had been guilty of such lewd and lascivious conduct as proved her to be unchaste. She denied the allegations of the petition, and counterclaimed for divorce on several grounds, including cruel and inhuman treatment. The chancellor granted the husband a divorce, and the wife appeals.

Though we are without power to reverse the judgment of divorce, we may consider the evidence for the purpose of determining whether alimony was properly denied or the custody of the children was properly granted. Chaudet v. Chaudet, 231 Ky. 477. 21 S. W. (2d) 812. Though we do not disturb the chancellor's judgment in a divorce case where the mind is left in doubt on issues of fact, Patrick v. Patrick, 223 Ky. 148, 3 S. W. (2d) 195, we review the evidence for ourselves and exercise our own judgment in determining whether the evidence warranted the judgment, Evans v. Evans, 229 Ky. 21, 16 S. W. (2d) 485.

We shall not undertake to detail the evidence. Appellee sought to prove by his own brothers that they had had improper relations with his wife, and as to one of them used his mother as a corroborating witness. As to the transactions detailed by one of the brothers and alleged to have occurred at the Autry home, the evidence

conclusively shows that appellant was not there at the time. It is extremely doubtful if she was there at the time referred to by the other brother and his mother. Though the mother claims to have witnessed the misconduct, she admits that she never reprimanded her son or even spoke of it to appellee. Not only so, but the stories told by the two brothers bear the earmarks of improbability. One of them attributed his conduct to the importunities of appellant, while the other repeatedly stated that she had "imposed" on him. In short, the whole burden of their song is that they were the unwilling victims of appellant's aggressive and consuming passion, which their childlike innocence could not withstand, and we conclude that they are not worthy of belief.

After the case had been pending for some time, appellee produced another witness who had been his companion in jail, and who claimed to have had intercourse with appellant. Not only was the charge not sustained by another witness, or by strong corroborating circumstances, as required by section 2119, Kentucky Statutes, but there was evidence that he was not present on one of the occasions he referred to, and that he was physically incapable of making the trip. In the circumstances his evidence was insufficient to sustain the charge of adultery or lewdness. But the point is made that the baby, Ruby Mae, who was born on January 25, 1929, was not appellee's child. The basis of this contention is nonaccess. Leaving out of consideration what occurred at the jail after appellee's confinement there on April 18, 1928, the evidence discloses that appellant and appellee were together in the early part of April, and the fact that the child was born a few days after the usual period of gestation is not sufficient to overcome the presumption that appellee was the father of the child. Cronin v. Cronin, 234 Ky. 207, 27 S. W. (2d) 950. From what has been said, it follows that the divorce was not justified on the ground of lewd and lascivious conduct on the part of the wife.

In support of appellant's counterclaim it was shown, not only that appellee was afflicted with a venereal disease, but that he repeatedly struck, cursed, and abused her in such a way as to make it impossible for her to live with him. In view of this evidence, there is no escape from the conclusion that he habitually behaved toward her for not less than six months in such a cruel and inhuman manner as both to indicate a settled aversion to her and to destroy permanently her peace and

happiness, thus entitling her to a divorce on the grounds relied on in her counterclaim. Section 2117, Kentucky Statutes.

As the divorce was improperly granted the husband and should have been granted the wife, it necessarily follows that the chancellor erred in refusing alimony and maintenance for the children.

It appears that appellee is drawing a pension for a disability of 35 per cent. The evidence as to the amount of the pension is not clear. It would seem, however, that the amount is $35, of which $15.75 has been allotted to the wife and $19.25 to him. Though appellee's efficiency is somewhat impaired, it does not appear that he is unable to work. However, in view of his physical condition, it is not altogether probable that he may obtain work in preference to able-bodied men. Because of this situation, we have reached the conclusion that appellee should pay appellant as alimony and maintenance for the two children the sum of $9.25 a month in addition to the $15.75 which she is now receiving.

Considering the case in the light of appellee's financial condition, and of the fact that appellant's attorneys were allowed a fee of $100 for their services in circuit court, we are inclined to the view that an allowance of $25 for their services in this court, to be taxed as costs, will be sufficient.

Judgment reversed, and cause remanded, with directions to enter judgment in conformity with this opinion.